I was starting to pack up, but here we are again. Thank you. May it please the Court. Matthew Hoppeck on behalf of the petitioner. This is a different kind of immigration case, one the Court sees all the time, about the asylum statute and what rules should apply to asylum applicants, what burden should they meet. Really the clearest and cleanest issue in this case is whether this Court requires, as a matter of law, that witness-based social groups have to have testified in court. That's what the immigration judge said at the trial level. He looked at this Court's cases that had resolved asylum cases on their facts, and he drew from those this rule of law that a particular social group made up of witnesses has to have some, as he said, testimonial or prosecutorial element. And he applied that rule to this case to conclude that even if you've made a police report, and that police report has been made public, the persecutor found out about it and then be a particular social group because you didn't testify in court. The answer to the question of whether that's required as a rule of law is a clear no. This Court has never required such a thing. The Board has never required such a thing. And I think in the most recent decision, since this Court has ruled on witness issues, the most recent decision that the Board has issued is a case called Matter of HLSA, issued about a month before the decision in this case. And in HLSA, they specifically said filing a police report might be enough to put you in this public group of informants or witnesses, and the key issue is whether the police report is public. The public nature of the filing of the police report is how we determine whether the group is socially distinct, or the Board here also said socially visible. Those terms roughly mean the same thing. But the Board, in our case, didn't apply Matter of HLSA, even though it was the precedent. It said we're adopting the immigration judge's decision, adopting it as our own, which means we agree with the reasoning the immigration judge gave. And what that leaves the Court with is a decision on review that claims this Court requires things that this Court has never required. Well, counsel, even if you're correct, it seems to me there's scant evidence that the proposed group is socially distinct. Wouldn't that be a broader issue? Well, that's what I'm talking about. How do we figure out social distinction? And HLSA gives the standard for how you figure out social distinction. If there's scant evidence, we can talk about the record. The Board said there was no evidence, and that leaves us with this question of whether the Board even read this UNHCR report. Yes, exactly. There is that report. Yes. So our first argument is we don't know if the Board missed it, or perhaps they're saying we just don't like it, and we can't divine that from the Board's decision because they didn't say. Saying there's no evidence is different than saying we've reviewed the record and we just don't agree that that's enough to meet your burden. But our argument back would also be What do you mean they said there was no evidence? They said the Respondent had not presented evidence that her group is otherwise socially distinct. Is that what you mean? Is that the line you're finding? That's what I mean. They say not presented. Well, I mean, that could be just a statement of sufficiency. Perhaps. But they don't mention that report. They're not required to write an exegesis on a thousand pages. Well, go ahead. You know our law. They're not required to and so forth. Yes. So perhaps I don't mean to read too much into what they're saying, but even getting into that report, the Board has never said there needs to be more than one report. This is a fact-finding report that the United Nations did in Guatemala. And in that report, the page that talks about witnesses very specifically says both witnesses and informants are recognized as a group. It doesn't say recognized as a group, but they're offered witness protection. The HLSA case says being offered witness protection is a sign that the group is recognized in the country. This Court's decision in Cano said the same thing. Witness protection is a way you can figure out from the record that the country recognizes witnesses as a group. You have that here. I mean, it What specifically do you think the U.N. report says? Yes. It's at page 267 to 269 of the record. I'm looking at it. I'm just, where do you get Yes. Starting at 268 in the heading, it talks about informants and witnesses, and then in the paragraph going from 268 to 269, it talks about, let me see if I can find the witness protection I'm just not sure it really says what you were just claiming. Well, It says depending on the particular circumstances of a case, witnesses may be in need of international refugee protection on the grounds of their membership in a particular social group. Yes, that's not the part I'm talking about. I apologize. I assume that doesn't support what you're saying because it's case specific. Yes, that's the conclusion part. The part the Attorney General says you don't have to defer what the U.N. says about who should get asylum or not. But the fact part I thought the report simply said that they've created an office to protect witnesses. Well, right. So we point to that because this court said That might be a factor in determining whether it's socially distinct, but it doesn't make a foregone conclusion, does it? I don't think she had to prove it was a foregone conclusion. She had to prove that she had a well-founded fear. And proving that on the ground about what's happening in Guatemala, what you do is you look at these country reports and you ask, what are witnesses or informants treated like in the country? And in Cano, this court said, a witness protection regime is a good way to figure out if the country recognizes that witnesses are a group. And the immigration judge and the board here, they didn't say we're going to resolve this on the scant evidence. They started with the law, they said. Witnesses can never be a group if they don't testify. And this UN report doesn't distinguish between testifying and having made a police report. It talks about witness protection and it talks about both informants and witnesses. I think the board missed that. I think by requiring in-trial testimony, it at least gives us a strong signal that it wasn't reading this report or perhaps skipped over it because the report isn't specific to witnesses. It includes informants as well. The report also talks about how witnesses, even if they're given witness protection, aren't often protected because the protection ends at the end of prosecution, that the names and identities of witnesses are sometimes leaked to the defendants, and then, of course, they're gone after. In a country like Guatemala, that puts witnesses at severe risk. We think the board's decision was wrong because it applied this as a matter of law. And I do read the has not presented evidence line as an indication that the board perhaps didn't engage with this report all that well because the report is evidence, whether the board says it disagrees with it or not, that Guatemala recognizes witnesses as a group. This Court has never required more than that for social distinction. In the Guthungu case, the Court talked about people that had been former members of this Kenyan group called the Mungiki, and proof that they are being targeted for harm was enough to prove that they were socially distinct. I think this is a case like that. The United Nations did a fact-finding report on the ground in Guatemala and said that's what's happening in Guatemala. Whether that meets the standard, I think, first requires us to figure out what the standard is. And the board here got the legal standard wrong by saying that you have to testify. It's just not required. It wasn't required in Garcia Mata, which is a case this Court issued about a witness-based social group where she never testified. And in the two cases that this Court has issued, Miranda and Ngugi, where the Court said you didn't testify, you're not in a group, both of those cases are resolved on the facts. Neither person actually reported the crime to the police, and the Court in neither case purported to make a new rule about what's required for a social group as a matter of law. I'll reserve the rest of my time. Thank you. Thank you for your argument. All right, Ms. Blosser, we'll hear from you. Thank you. Thank you. Kristen Blosser on behalf of the Respondent, the United States Attorney General. May it please the Court. The petition for review in this case should be denied because the agency correctly determined that petitioner's proposed particular social group of witnesses who cooperate with law enforcement I was just going to ask if you could adjust the microphone. Go ahead. Witnesses who cooperate with law enforcement is not legally cognizable because the group is not socially distinct within Guatemalan society, nor is it defined with the requisite particularity. Beginning first with the issue of social distinction. As the government argued in its brief here, the agency conducted the proper analysis relying on this Court's prior precedential decisions in Miranda and Gucci when considering the specifics of petitioner's individual claim, evaluating the contours of her proposed group, and considering the relevant record evidence, but ultimately determined that the evidence of record did not establish that her proposed group was socially distinct in Guatemalan society. In fact, the only evidence of country conditions in this record is contained in a six-page excerpt from a report prepared by the United Nations High Commissioner for Refugees, or UNHCR. Despite petitioner's arguments to the contrary, it is clear that the Board considered this report but deemed it insufficient. If we look to page four of the administrative record, the Board, when discussing petitioner's arguments on appeal and specifically referring to the elements of social distinction, included a specific citation to Exhibit 4 at pages 64 to 67. Those page numbers correspond to pages 264 to 267 of the administrative record, where the UNHCR report excerpt is located. So it is clear, and we do know from the Board's decision, that it considered this report. However, it determined that this report was insufficient. Substantial evidence supports the agency's determination that this was not enough to show social distinction. This six-page excerpt indicates that Guatemala created a program for the provision of protection and support for witnesses in criminal processes, but it does not go so far as petitioner suggests to illuminate Guatemalan society's perceptions with respect to petitioner's proposed group, witnesses who cooperate with law enforcement, which is a broader group than witnesses in criminal processes, nor does it indicate that individuals like petitioner who simply file a police report without anything more are entitled to protection under this program. The report mentions, as petitioner's counsel has noted, that individuals who testify or individuals who observe crime or are victims of crime are often targeted for retaliation by gangs or other criminal organizations. But the simple fact that people may be targeted by gangs does not indicate what Guatemalan society's perceptions are with respect to petitioner's proposed group, witnesses who cooperate with law enforcement. I'd like to turn to petitioner's argument that the Board and the immigration judge included a per se legal requirement that her proposed group necessarily needed to include a testimonial element or prosecutorial element in the formulation of the group in order to be legally cognizable. The government's position is that this is a misreading of the agency's decisions. Neither the immigration judge nor the Board said, petitioner, your group is not cognizable simply because you did not testify. Instead, at both levels, the immigration judge and the Board both looked to the evidence that petitioner submitted and determined that that evidence wasn't sufficient to demonstrate social distinction. This is not a rejection of her group on the legal basis that petitioner claims. Turning to petitioner's arguments regarding the matter of HLSA, the Board in HLSA cited to this Court's precedents in Miranda and Gucki approvingly, stating that it intended its decision to be consistent with those decisions and the agency here at both levels relied upon those very decisions from this Court when considering petitioner's claim. In that sense, the agency here has already applied the analysis that the Board approved of in matter of HLSA. Now, second, petitioner focuses heavily in the brief on this issue of public cooperation, but this doesn't change the fact that petitioner failed to show that society as a whole recognizes her group as socially distinct in Guatemalan society. What's important to note about the holding by the Board in matter of HLSA is that it contains two parts. The Board said that individuals who cooperate with law enforcement may be a particular social group if cooperation was public in nature, and that's the portion of the holding that petitioners focus upon in their brief, but the Board also went on and it said, and the evidence in the record reflects that society in question recognizes and provides protection for such cooperation, and that's what the agency said was lacking here. It looked to the record evidence and said there wasn't evidence of social distinction. Unless the court has any further questions regarding social distinction, I'd like to turn to the issue of particularity. Substantial evidence supports the immigration judge's particularity finding because petitioner's proposed group was overbroad, it lacked definable boundaries, and it said that the term witness is all-encompassing. The point of particularity is to ensure that the proposed group has clear boundaries, but it's impossible to provide clear boundaries if the words that are used to define the group given their surrounding context contain multiple meanings, and persuasively, this court has rejected other similarly formulated groups that were defined with even more particularity in cases like Rivas and Cerritos, which is an unpublished decision by this court, as well as Gugi and Miranda. And finally, with respect to petitioner's argument in their brief that it isn't clear whether the board agreed with the immigration judge with respect to particularity, this is incorrect. The board adopted and affirmed, citing to Bourbonneau in its decision, and expressly stated that it agreed with the immigration judge that petitioner's proposed group was not legally cognizable. By adopting and affirming the immigration judge's decision, the board was adopting the immigration judge's reasoning on legal cognizability, which included both the reasoning regarding social distinction and its reasoning regarding particularity. Let me ask you this. Suppose Attorney General Garland said or thought that although there's no particular social group here, that it would be better not to return a person who's a cooperating witness like she is, who may be subject to violence on account of her being a witness who reported a crime. Is there any discretionary relief that could be granted under the immigration law? I am not aware, Your Honor. I think in some other circuits there have been creations, like in the Ninth Circuit, of a mechanism called judicial administrative closure. I'm not aware of the existence of a similar mechanism in this court. No, I don't mean by our court. I mean if the Attorney General, in his discretion, wanted to say, we don't want to return this woman because she could be subject to retaliation by gangs and so forth, but she doesn't qualify under the asylum laws. Is there any mechanism available for the Attorney General to grant some kind of relief? There may be, Your Honor, but I'm not aware of specifically what that mechanism is or I'd be happy to. No, I just wanted to know if there's an avenue available. I apologize, Your Honor. I don't know the specific answer to that question. All right. You may proceed. And finally, just with respect to one point that my colleague made in opening, Petitioners cite to this Court's decision in Githungu and argue that the fact that an individual might be targeted for harm is sufficient for social distinction purposes. But that, the Board in matter of MEBG laid out the test for social distinction and legal cognizability more broadly. And the test for social distinction relies on what society's perception of the group is. So the simple fact that individuals might be harmed upon return isn't, that's not the test for social distinction. Social distinction goes to what society's perceptions are. Unless the Court has any further questions, I'd briefly sum up and request that the Court deny the petition for review. All right. Thank you for your argument. Mr. Hoppeck, we'll hear rebuttal. Thank you. Starting with the record. So the immigration judge's decision did not go through the evidence and say, you know, this report is insufficient or that report is insufficient. The section on witnesses who cooperate with law enforcement, which was the group, is two paragraphs long. And almost all of it is legal analysis. It's the IJ saying that this Court doesn't allow groups like that. Looking at Ngugi, looking at Miranda. And that's just flat out wrong. He not only says it in those paragraphs, he then drops a footnote, footnote two at page 86, where he says all of the cases that recognize witness-based groups required, quote, some sort of testimonial or prosecutorial element. Now, it's true. How about the last sentence that starts with further? That's where I was going. Yeah. It's true that his very last conclusory sentence says the record contains insufficient evidence. But this is not engaging with the evidence. He doesn't talk about why the UNHCR is insufficient. And I would say, you know, Judge Colleton, you asked me where it is in the report earlier. I just underlined a few parts at page 268. It talks about those who denounce crimes. There's a section in my brief that talks about this word denounce and how in Guatemala that's the word for making a police report. Those who denounce crimes or cooperate with authorities as informants are routinely pursued for their betrayal, often along with their family members, even when placed in a witness protection program. The existence of a witness protection program is a sign of social distinction. That's what the Board said in matter of HLSA. That's what this Court said in matter in Kano. The easiest thing to do would be to send this back to the Board and say, you didn't mention matter of HLSA. It's your leading case on the question. Apply that standard and tell us whether it applies.  The Board, searching its decision, didn't say a word about it. Thank you. All right. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The Court will file a decision in due course. Counsel are excused.